1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CMRE FINANCIAL SERVICES INC.,
PROFESSIONAL CLAIMS BUREAU
LLC,

         Plaintiffs/Counter-Defendants,

     v.

DOXO INC.,

         Defendant/Counter-Claimant.

CASE NO. 2:22-cv-00298-RAJ-BAT

**REPORT AND
RECOMMENDATION**

Defendant/Counter-Claimant Doxo, Inc. ("Doxo") seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on its Counterclaim and the Complaint of Plaintiffs/Counter-Defendants CMRE Financial Services, Inc. ("CMRE") and Professional Claims Bureau ("PCB") (collectively, "Plaintiffs"). Dkt. 27.

For the reasons set forth below, the undersigned finds the motion may be determined without oral argument and recommends that the motion be granted.

<u>BACKGROUND</u>

A.   <u>Procedural Background</u>

Plaintiffs sued Doxo for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq*.; tortious interference with business relations, and conversion for the improper use of Plaintiffs' names, which they use as service marks in connection with providing debt collection

REPORT AND RECOMMENDATION - 1

1    services. Dkt. 1, ¶¶ 14, 36. Plaintiffs allege that Doxo is falsely representing itself as their

2    representative through its improper use of their service marks on Doxo's online bill-paying

3    system and is misleading customers into believing that Plaintiffs endorse or sponsor Doxo's bill-

4    payment services. *See*, *e.g.*, *id.* ¶¶ 26, 47.

5           Doxo filed an Answer and Counterclaim seeking a declaratory judgment that Doxo's use

6    of Plaintiffs' service marks constitutes nominative fair use and therefore, does not constitute

7    trademark infringement or otherwise violate the Lanham Act or the CPA and does not constitute

8    tortious interference or conversion. Dkt. 13, ¶¶ 40–52.

9           Plaintiffs moved to dismiss Doxo's Counterclaim and certain affirmative defenses.

10   Dkt. 19, 22. The Court denied Plaintiffs' motion to dismiss Doxo's Counterclaim but granted

11   Plaintiffs' motion to strike an affirmative defense based on the same theory. Dkt. 25 (adopting

12   Report and Recommendation (Dkt. 23)). Plaintiffs filed their Answer to the Counterclaim on

13   August 26, 2022. Dkt 26.

14   B.     Plaintiffs' Allegations (Complaint, Dkt. 1)

15          CMRE and PCB are debt collection agencies. Dkt. 1, ¶¶ 1, 35. Doxo's homepage has a

16   search bar that allows Doxo users to search Doxo's biller network pages. *Id.* ¶ 16. Typing

17   "CMRE" or "PCB" into the search bar on Doxo's homepage takes users to Doxo's biller network

18   page ("Biller Profile Page") that displays Plaintiffs' service marks. *Id.* ¶¶ 17, 37 (citing

19   https://www.doxo.com/info/cmre-financial-services; and at: https://www.doxo.com/info/ p-c-b-

20   inc-ny). The Biller Profile Pages for CMRE and PCB are identical except for their names. Both

21   pages indicate that customers can "Pay Your Bills Securely with doxo". *Id.* Both pages include

22   an interface for contacting the biller. *Id.* ¶19.

23

REPORT AND RECOMMENDATION - 2

Plaintiffs never authorized Doxo to collect funds from consumers and have demanded that Doxo cease accepting payments and remove their service marks from Doxo's website. *Id.* ¶¶ 20-24; 43-44. Plaintiffs believe their customers have been and are being confused by Doxo's website into making payments on accounts to Doxo that were sought and due to Plaintiffs and that Doxo is misleading their customers into falsely believing Doxo is authorized to collect those payments. *Id.* ¶¶ 25-26; 45-46.

On August 20, 2021, a debtor, who made an online payment to CMRE via DOXO, was charged a $3.99 fee. *Id.* ¶ 27. Plaintiffs believe this presents a likelihood of confusion as the debtor may consider CMRE to be charging processing fees that are not authorized by contract or law, which unfairly exposes them to potential liability under federal and state debt collection and consumer protection statutes. *Id.* ¶ 29. In addition, two customers have made complaints about Doxo to the Better Business Bureau. *Id.* ¶ 31.

Plaintiffs believe Doxo has failed to pay to them "at least some of the funds it has collected from [their] consumers who were misled by Doxo into believing they were timely and fully paying the accounts owed to [them]. *Id.* ¶¶ 32; 49.

C.     Doxo's Counterclaim

In its Counterclaim, Doxo seeks a declaratory judgment that it is not infringing any rights that Plaintiffs[1] might hold in their service marks. Dkt. 13.

Doxo offers a streamlined and secure all-in-one online bill-paying system through which millions of consumers can pay their bills to tens of thousands of billers across the country. Dkt. 13 ¶ 7. This streamlined system allows Doxo's users to organize all their biller accounts, manage

---

[1] Although properly identified as Counter-Defendants, the Court refers to the parties by name or by Plaintiffs and Defendant throughout to avoid confusion.

1   all their due dates, and pay all their bills through a single mobile or online application, with a

2   single login, while keeping sensitive payment information in one place. *Id.* To date, over 7

3   million users, across more than 95 percent of United States zip codes, have paid tens of

4   thousands of different billers on Doxo. Doxo's service is one of many all-in-one bill-pay

5   services, including those provided by banks and other independent parties. *Id*. ¶¶ 19-10.

6         Every page of Doxo's website, located at doxo.com, prominently features the DOXO

7   word mark, Doxo's logo, and top and bottom banners in the Doxo blue. The website's home

8   page includes numerous other indications that Doxo is the source of the website's content, such

9   as use of the terms doxoPLUS, doxoDIRECT, and doxoINSIGHTS, and a copyright and

10  trademark notice ("© 2022 doxo inc., doxo is a registered trademark of doxo inc."). *Id.* ¶ 9. Doxo

11  has been using the mark DOXO in connection with its bill payment service and related offerings

12  since March 2009. Doxo owns United States trademark registration number 4168527 for the

13  mark DOXO for use in connection with its bill payment service and related offerings in

14  international classes 36 and 42. *Id.* ¶¶ 10-11.

15        Doxo's service allows its users to make payments to over 115,000 billers across the

16  country. If a biller is not in Doxo's directory, any Doxo user can request that a new biller be

17  added. When Doxo adds new billers to the directory, those companies are validated by Doxo and

18  Doxo's website is then updated with a Biller Profile Page for the new biller. A Biller Profile

19  Page organizes the relevant addresses, phone numbers, emails, and web links for that biller and is

20  standardized across all billers in Doxo's directory. Users can therefore access relevant

21  information for all their billers in one format, on a single application, regardless of the industry

22  or size of each respective biller. *Id.* ¶¶ 11-13.

23

1    The Doxo Biller Profile Page includes various items making clear that Doxo is not

2 affiliated with any one biller, for example, by listing other overlapping billers, including a

3 payment location map, and providing average payment amount. The Biller Profile Page also

4 features prominent Doxo branding, including the DOXO trademark, the Doxo logo, and the top

5 banner in Doxo blue. *Id.* ¶ 14. Doxo delivers payments to billers in its network using the same

6 electronic and mailed check delivery processes that other independent bill-pay services utilize,

7 including the bank bill-pay systems. For billers that elect to join the network, Doxo delivers

8 payments directly and electronically. *Id.* ¶ 16.[2] Doxo's all-in-one bill pay services allows any

9 user to pay any biller in the Doxo directory for free using a linked bank account. Users who pay

10 with a debit or with credit card may be subject to a variable fee, which is clearly displayed at the

11 time of checkout. *Id.* ¶ 17.

12    CMRE was originally added to the Doxo directory on July 22, 2021, and PCB was

13 originally added to the Doxo directory on July 13, 2017. *Id.* ¶¶ 21-22. Doxo includes Plaintiffs'

14 marks (like all other billers' marks) to identify each biller, *i.e.*, the company to whom the Doxo

15 user intends to make a payment. Identifying Plaintiffs using Plaintiffs' marks allows Doxo users

16 to add Plaintiffs to the users' personal list of billers, organize the users' personal account

17 information and contact information for that account, set specific due dates for bill payments,

18 make payments, and track the completion of payments and other activity related to the users'

19 account with Plaintiffs (as well as the other accounts they manage). *Id.* ¶¶ 23-24.

20    Doxo must use Plaintiffs' marks to ensure its users can execute these activities as they

21 pertain to Plaintiffs and to avoid consumer confusion in distinguishing between Plaintiffs and the

22

23 ───────────────

[2] An example of this can be found at https://www.doxo.com/info/hurleymc. Doxo explains that there is no disclaimer on Hurley Medical's profile page as Hurley Medical entered into an agreement with Doxo and is participating directly in Doxo's payment network. Dkt. 29 at 9, n.3.

115,000 other billers in Doxo's directory of billers. No other practical and/or effective method exists to identify CMRE and PCB other than by using their names. *Id.* ¶ 26. Doxo does not and has not indicated that it has the right or is accepting payments on behalf of CMRE or PCB or any other biller. *Id.* ¶ 27. Doxo specifically disclaims any endorsement, sponsorship, or affiliation, highlighting that Doxo is not endorsed by or affiliated with Plaintiffs. *Id.* ¶ 28.

For example, the following text appears within the payment window and immediately below the "payment" button: "doxo enables secure bill payment on your behalf and is not an affiliate or endorsed by Professional Claims Bureau." *Id.* ¶ 29. Immediately below the payment window on the same page, the following text again disclaims any affiliation or endorsement: "doxo is a secure all-in-one bill pay service enabling payment to thousands of billers. doxo is not an affiliate of Professional Claims Bureau. Logos and other trademarks within this site are the property of respective owners. No endorsement has been given nor is implied." *Id.* ¶ 30.

On both the payment checkout experience page (where customers enter their account information) and the page before payment is submitted for delivery, Doxo again notifies the user that there is no endorsement or affiliation by Plaintiffs with the language: "doxo is not an affiliate of [Professional Claims Bureau]. Logos and other trademarks within this site are the property of their respective owners. No endorsement has been given nor is implied." *Id.* ¶ 31.

To further disclaim any affiliation by Plaintiffs and to ensure the user understands the timing of their payment delivery, Doxo requires users to confirm certain language by checking a box on the final page of the payment process, where the user reviews its complete payment information and submits the payment. The user is not able to submit a payment without checking a box confirming that: "I understand the delivery date for my payment is [delivery date]. If you have received an overdue notice or need to deliver your payment sooner, do not complete

payment here. Instead, contact the company [link to company website] directly to make your payment." *Id.*, ¶ 32. The confirmation screen that appears after users submit their payment reflects the tracking information and gives users the ability to cancel the transaction. *Id.*, ¶ 33. The user receives an email receipt for the transaction from Doxo, through Doxo's email address, again clarifying that Doxo, and not Plaintiffs or any other biller, is the party providing the service. *Id.* ¶ 35.

## STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings challenges the legal sufficiency of the claims asserted in a complaint. For the purposes of a Rule 12(c) motion, the Court must accept the allegations of the non-moving party as true. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.")

Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotations and citation omitted). A court may also consider

1  documents attached to the pleadings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th

2  Cir. 2001). In this regard, a court need not accept as true any allegations that are contradicted by

3  judicially noticeable facts. *In re Google Inc.*, No. 13-md-2430-LHK, 2013 WL 5423918, at *5

4  (N.D. Cal. Sept. 26, 2013) (citing *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)). A

5  court is not required to assume the truth of conclusory allegations or of unwarranted inferences.

6  *Id*. (citations omitted).

7  <u>REQUEST FOR JUDICIAL NOTICE</u>

8         Under Federal Rule of Evidence 201, a court must take judicial notice of certain facts "if

9  a party requests it and the court is supplied with the necessary information." Fed. R. Evid.

10  201(c)(2). Rule 201 allows a court to take judicial notice of facts that are not subject to

11  reasonable dispute because they are generally known within the trial court's territorial

12  jurisdiction or, that can be accurately and readily determined from sources whose accuracy

13  cannot reasonably be questioned. Fed. R. Evid. 201(b).

14         Doxo asks the Court to take judicial notice of the entirety of its website – not just the

15  Biller Profile Pages referred to in Plaintiffs' Complaint. Plaintiffs argue that Doxo is asking the

16  Court to take judicial notice of web pages that are "cited only in Doxo's Counterclaim" and are

17  available only to Doxo users "during the checkout experience." Dkt. 28, p. 5.

18         In general, websites and their contents may be judicially noticed. *See*, *Threshold

19  Enterprises Ltd. v. Pressed Juicery, Inc*., 445 F.Supp.3d 139, 146 (N.D. Cal. 2020). The

20  incorporation by reference doctrine also "prevents parties from selecting only portions of

21  documents that support their claims, while omitting portions of those very documents that

22  weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002

23  (9th Cir. 2018). Because the allegedly deceptive nature of Doxo's bill payment platform forms

REPORT AND RECOMMENDATION - 8

the basis of Plaintiffs' lawsuit, the Court can consider all aspects of that platform – both the Biller Profile Pages and the checkout experience. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document itself forms the basis of the plaintiff's claim."); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material. Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages.").

Plaintiffs claim that Doxo "interject[ed] itself into the payment process of consumers" and "is falsely representing itself [on its website] as [Plaintiffs'] authorized representative, inducing Plaintiffs' consumers to send payments due to Doxo rather than to CMRE or PCB." Dkt. 1, ¶¶ 1, 3. Therefore, review of the web pages in the context in which they are seen by consumers when they are using Doxo's website is necessary to determine if the webpages are deceptive. Relevant portions of the webpages at issue are clearly set forth in Doxo's Counterclaim.

Moreover, the Court can take judicial notice of the checkout process webpages for purposes of "their existence and content, and not for the truth of any statements in the document." *Threshold Enters.*, 445 F. Supp. 3d at 146 (citation omitted). Doxo need not establish the truth of any content in the consumer checkout webpages, only that the information is there. *See id.* ("[T]he Court notices only the fact that the documents contain the referenced content" but "does not take judicial notice of the truth of that content.").

1    Plaintiffs do not dispute that the consumers who paid Plaintiffs through Doxo saw this

2    content but infer that it may not provide a complete picture. Dkt. 28, pp. 4-5. Plaintiffs cite to

3    *Dominion Enterprises v. LinkUSystems, Inc.*, No. SACV111852DOCANX, 2012 WL 12886502,

4    at *4 (C.D. Cal. Feb. 16, 2012), a case that involved "an intense factual dispute" as to whether

5    the webpage at issue contained the entire customer list. Here, there is no such dispute and

6    Plaintiffs fail to explain what relevant content is missing.

7    The Court, therefore, concludes that it is appropriate to take judicial notice of the

8    checkout process webpages for purposes of "their existence and content, and not for the truth of

9    any statements in the document." *Threshold Enters.*, 445 F. Supp. at 146 (citation omitted).

10    <u>DISCUSSION</u>

11    Plaintiffs sued Doxo for unfair competition under the Lanham Act, alleging that, through

12    Doxo's use of Plaintiffs' service marks on its website, Doxo is "falsely representing itself as

13    [CMRE's and PCB'S] authorized representative." Plaintiffs' derivative state law claims of

14    tortious interference and conversion are based on the same allegation that Doxo's use of

15    Plaintiffs' service marks misleads customers into believing that Plaintiffs endorse or sponsor

16    Doxo's bill payment service. Doxo seeks dismissal of Plaintiffs' claims, arguing that its use of

17    Plaintiffs' marks constituted nominal fair use.

18    Where a defendant uses a trademark to describe the plaintiff's product rather than its own

19    product, that defendant is entitled to the nominative fair use defense. *Downing v. Abercrombie &*

20    *Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001). Nominative fair use is appropriate in the "class of

21    cases where the use of the trademark does not attempt to capitalize on consumer confusion or to

22    appropriate the cachet of one product for a different one." *New Kids on the Block v. News*

23    *America Publishing, Inc.*, 971 F.3d 302, 308 (9th Cir. 1992). Where the "only word reasonably

1   available to describe a particular thing is pressed into service" this nominal use does not

2   constitute unfair competition because it does not imply sponsorship by the trademark holder and

3   therefore, such use "lies outside the strictures of trademark law". *Id*.; *see also*, *Volkswagenwerk*

4   *Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir.), *supplemented* 413 F.2d 1128 (9th Cir.

5   1969) (auto shop using VOLKSWAGEN mark to advertise that it repairs Volkswagen cars);

6   *WCVB-TV v. Bos. Athletic Ass'n*, 926 F.2d 42 (1st Cir. 1991) (television station broadcasting the

7   mark BOSTON MARATHON to describe an annual sporting event).

8           To invoke a nominal use defense, a defendant must meet the following three

9   requirements: (1) the product or service in question must be one not readily identifiable without

10  use of the trademark; (2) only so much of the mark or marks may be used as reasonable

11  necessary to identify the product or service; and (3) the user must do nothing that would, in

12  conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

13  *Downing*, 265 F.3d at 1009 (citing *New Kids*, 971 F.3d at 308-09). Plaintiff bears the burden of

14  establishing that Doxo's use of their service marks was not a nominative fair use. *Toyota Motor*

15  *Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010) (citations omitted). The

16  nominative fair use elements are "conjunctive," and thus, Plaintiff need only show one of these

17  elements has not been met to prevail at the motion to dismiss stage. *See Yeager v. Cingular*

18  *Wireless, LLC*, 627 F.Supp.2d 1170, 1178 n.9 (E.D. Cal. June 12, 2008).

19          If the nominative use of a mark satisfies these three factors, then there is no infringement.

20  *Toyota*, 610 F.3d at 1176. Dismissing trademark infringement claims is appropriate where the

21  defendant's nominative fair use is clear on the face of the complaint. *See Applied Underwriters,*

22  *Inc. v. Lichtenegger*, 913 F.3d 884, 894 (9th Cir. 2019).

23          The Court analyzes each factor in turn.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

A.      Whether the Product is Readily Identifiable Without Use of the Marks

Using a trademark is appropriate where it is "the most straightforward, obvious and truthful way to describe" the service or product associated with that mark. *Toyota*, 610 F.3d at 1177. That a descriptive substitute exists is insufficient. Thus, "one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls." *New Kids*, 971 F.2d at 306.

Plaintiffs acknowledge that Doxo cannot identify them as two of the thousands of billers on Doxo's website without using their service marks and that Doxo need not create a generic description when referring to Plaintiffs' specific products. Dkt. 28, p. 6 (citing *Lichtenegger*, 913 F.3d at 894 (9th Cir. 2019). It is evident from the Complaint that Doxo's bill-paying system hinges on its users' ability to correctly identify a particular biller among thousands of other billers in Doxo's system. To preclude Doxo from using Plaintiffs' (and other billers') service marks would undermine the functionality of Doxo's consumer service, a result that the first nominative fair use factor is meant to prevent. *See Adaptive Mktg. LLC v. Girard Gibbs LLP*, No. CV 09-04739 RGK RCX, 2009 WL 8464168, at * 3 (C.D. Cal. Oct. 9, 2009) (holding that the first factor was satisfied because, "[w]ithout the use of Plaintiffs' marks, [defendant's services] would not perform their intended function").

Plaintiff acknowledges and the pleadings reflect that the first *New Kids* factor is satisfied.

B.      Whether Doxo Used More Than Was Necessary of Plaintiffs' Mark

What is "reasonably necessary to identify the plaintiff's product differs from case to case." *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1154 (9th Cir. 2002). If a defendant must describe a plaintiff's product to describe its own product, "more use of the plaintiff's trademark [by the defendant] is reasonably necessary to identify the plaintiff's product than in cases where

the description of the defendant's product does not depend on the description of the plaintiff's product." *Id.*, 292 F.3d at 1154. Plaintiffs contend that the second factor is not met because Doxo displays their service marks repeatedly and consistently on the Doxo website in a larger font than it displays its own marks. Dkt. 1, ¶¶ 18, 38.

The second factor does not implicate the *number* of uses of a mark, but rather the *nature* of the uses – for example, "a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke but would not be entitled to use Coca-Cola's distinctive lettering." *Lichtenegger*, 913 F.3d at 895 (citing *New Kids*, 971 F.2d at 308 n.7; *Playboy Enterprises, Inc. v. Welles,* 279 F.3d 796, 802 (9th Cir. 2002) ("Welles' banner advertisements and headlines satisfy this element because they use only the trademarked words, not the font or symbols associated with the trademarks."); *Volkswagenwerk*, 411 F.2d at 352 (defendant "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem"); *cf. Toyota*, 610 F.3d at 1181 (the use of the stylized Lexus mark and "Lexus L' logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota as defendants "could adequately communicate their message without using the visual trappings of the Lexus brand.")). *See also*, *Sierra*, 2022 WL 658016 at *5 (where defendant had used both the stylized version of the SIERRA word mark and a generic, non-stylized version of SIERRA, "the availability of the generic SIERRA word mark suggests that, like in *Playboy Enterprises*, Defendant did not need the stylized version to readily identify Plaintiff's products.").

These cases illustrate a concern over a defendant's use of font or symbols *associated with* a particular trademark. Here, Plaintiffs do not allege that Doxo is improperly using their font, stylization, or logo. Instead, Plaintiffs argue that Doxo went beyond reasonable use by displaying their names in a larger font than Doxo used for its own name on the Biller Profile Pages. The

1    Court disagrees that this constitutes unreasonable use.

2          First, Plaintiffs cite no authority for the proposition that putting a plaintiff's name in

3    "larger font" is unnecessary use. In fact, case law indicates that trademarks can be used

4    nominatively in "enhanced" headings. *See*, *e.g.*, *Playboy*, 279 F.3d at 802 (holding that

5    trademarked words in "banner advertisements and headlines" satisfied the second *New Kids*

6    factor); *Lichtenegger*, 913 F.3d at 894, 895 (defendants used plaintiffs' names without using

7    defendants' design or distinctive lettering (small-caps rendering)).

8          Second, viewing Doxo's use of Plaintiffs' service marks in the context of the Biller

9    Profile Pages, the undersigned concludes that Doxo uses Plaintiffs' marks sparingly and

10   generally with a disclaimer of any association between Doxo and Plaintiffs. For example, on the

11   Biller Profile page for CMRE, the words "CMRE Financial Services" are depicted on the left-

12   side of the page in a box with a white background and are rendered in a light blue font that is

13   larger than other words depicted on the page. Across from this, on the right-side of the page, set

14   off in a box highlighted in dark blue, are the words "Pay Your CMRE Financial Services bill

15   *with* doxo;" Dkt. 13, ¶ 14 (emphasis added); Dkt. 1, ¶¶ 18, 38 (the Biller Profile Pages are

16   identical for CMRE and PCB). The Biller Profile Page contains other disclaimers: "doxo enables

17   secure payment on your behalf and is not an affiliate or endorsed by CMRE Financial Services";

18   "Logos and other trademarks within this site are the property of their respective owners. No

19   endorsement has been given nor is implied." *See id.*, ¶¶ 18, 38.

20         Third, the Doxo Biller Profile Pages features prominent Doxo branding, including the

21   DOXO trademark, the Doxo logo, and the top banner in Doxo blue. *Id.*; *see also* Dkt. 1 ¶ 37

22   (discussing "Infringing Webpage" "found at https://www.doxo.com/info/p-c-b-inc-ny", the full

23   version of which contains the Doxo logo and top banner in blue).

Doxo users also encounter additional notices in the payment checkout process specifically disclaiming any endorsement, sponsorship, or affiliation by any biller. For example, the payment checkout page for PCB (where customers enter their account information) again notifies users that Doxo "is not an affiliate of [Professional Claims Bureau]," that "[l]ogos and other trademarks within this site are the property of their respective owners," and that "[n]o endorsement has been given nor is implied." Dkt. 13, ¶ 31. In the final page of the payment process, where the Doxo user reviews its complete payment information and submits the payment, the user must confirm: "I understand the delivery date for my payment will be [PAYMENT DEADLINE]. If you have received an overdue notice or need to deliver your payment sooner, do not complete payment here. Instead, contact the company directly to make your payment." *Id*. ¶ 32. The confirmation screen that appears after users submit payment reflects the tracking information and gives users the ability to cancel the transaction. *Id*. ¶ 33. The user receives an email receipt from Doxo, through Doxo's email address, again clarifying that Doxo is the party providing the service. *Id*. ¶ 34.

Finally, the Biller Profile Page for CMRE or PCB includes several special features (biller contact details, list of overlapping billers, FAQs, and payment location map). When these features are viewed in context of the consumer's bill paying experience, it is clear that these features are meant to convey critical information to consumers regarding the particular biller and to prevent consumers from inadvertently paying the wrong biller.

The undersigned concludes that the second *New Kids* prong of the nominative fair use test is met because Doxo's use of Plaintiffs' service marks does not constitute more than necessary use. Plaintiffs' Complaint does not and cannot allege any well-pleaded facts suggesting that Doxo used more of Plaintiffs' service marks than reasonably necessary to

1   communicate its services and to identify CMRE and PCB *as the particular biller* amongst

2   thousands of other billers on Doxo's website. Plaintiffs provide no support to suggest that the use

3   of a larger font for a biller's name on a Biller Profile Page is per se unreasonable.

4   C.      Whether Doxo's Use of CMRE/PCB Marks Implies Endorsement or Sponsorship

5           The third *New Kids* factor turns on whether Doxo's use implies sponsorship or

6   endorsement. *New Kids*, 971 F.2d at 309. In addressing the third nominative fair use factor, a

7   court's "focus must be on the reasonably prudent consumer in the marketplace." *Toyota*, 610

8   F.3d at 1176. "Unreasonable, imprudent and inexperienced web-shippers are not relevant." *Id*.

9   Moreover, evidence of confusion cannot save a complaint that fails to establish a reasonable

10  consumer would be actually confused as to sponsorship or endorsement. *See Healthvana, Inc. v.*

11  *Telebrands Corp*., No. CV2004305DDPSKX, 2022 WL 562265, at *4 (C.D. Cal. Feb. 23, 2022)

12  (distinguishing "inattentive or careless" consumers from those that are "actually confused").

13          In reviewing this factor, the Court may also consider the inclusion of numerous

14  disclaimers on Doxo's website. Although the Ninth Circuit does not require disclaimers,

15  "inclusion of such words will usually negate any hint of sponsorship or endorsement[.]" *Toyota*,

16  610 F.3d at 1177; *see also*, *e.g.*, *Capcom, Co., Ltd. v. MKR Group, Inc*., 2008 WL 4661479 at

17  *13 (N.D. Cal. 2008) ("[N]othing about using a mark in a disclaimer denying affiliation gives

18  rise to confusion. [Plaintiff]'s claim premised on the disclaimer . . . must be dismissed.");

19  *Beachbody, LLC v. Universal Nutrients, LLC*, 2016 WL 3912014, at *2 (C.D. Cal. 2016)

20  ("[Because it is] clearly stated on the back of OmniHealth boxes that Defendant's meal

21  replacement shake is not associated with 'shakeology'[,] . . . Plaintiff does not allege sufficient

22  facts to demonstrate consumers are likely to be confused about a relationship between Plaintiff's

23  and Defendants' products.").

1    Plaintiffs contend that the small font Doxo uses for its disclaimers argues against its

2    effectiveness. However, the disclaimers are not in any smaller font than other text on the Biller

3    Profile Page and are not the type of tiny disclaimers, which were set off on a different panel or at

4    the very bottom of the web page, as discussed in the cases on which Plaintiffs rely. *See e.g.,*

5    *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 920 (N.D. Cal. 2021) and

6    *BMW of N. Am., LLC v. Mini Works, LLC*, No. CV-07-1936-PHX-SMM, 2010 WL 11484171, at

7    *14 (D. Ariz. Sept. 27, 2010).

8    As previously noted, the Biller Profile Pages for CMRE and PCB advise that Doxo "is

9    not an affiliate of or endorsed by [CMRE or PCB]; that Doxo "is not an affiliate of [CMRE or

10   PCB]; that "[l]ogos and other trademarks within this site are the property of their respective

11   owners"; and that "[n]o endorsement has been given or is implied." *See* Dkt. 1, ¶ 38. More

12   disclaimers appear on the customer checkout page and during the payment process. Dkt. 13, ¶¶

13   31–32. These disclaimers suggest that Doxo is an independent site and not affiliated with any

14   one biller. *See Pasadena*, 2021 WL 3553499 at *6 (dismissal of trademark claims appropriate

15   where defendant "did not use any express or implied language of sponsorship or endorsement").

16   In addition, Doxo's website contains its own branding, including the DOXO trademark, the

17   Doxo logo, and the top banner in Doxo blue. *Id.*, Countercl. ¶ 14; *see Lichtenegger*, 913 F.3d at

18   897 (emphasizing that the defendants "advertised the seminar under [their own] banner" in

19   holding that no reasonable consumer could be confused).

20   While the use of an effective disclaimer is not determinative of whether Doxo suggested

21   sponsorship or endorsement, here Doxo uses numerous disclaimers which appear on several

22   webpages. The Court does not view the disclaimers in a vacuum. Rather, it has considered them

23   in the context of what a customer encounters during the payment process on the Doxo website.

The disclaimers appear numerous times and alongside other items – list of overlapping billers, payment location map, distinctive Doxo word mark, logo, and banners, and colors – all of which suggest that it is not plausible that any reasonable consumer accustomed to navigating the internet would be confused. *See*, *e.g.*, *Lichtenegger*, 913 F.3d at 897 (emphasizing the presence of the defendant's own branding and disclaimers in finding no suggestion of endorsement or sponsorship).

Additionally, Plaintiffs do not allege any actual confusion.[3]  Plaintiffs allege only on "information and belief" that its "consumers have been and are being confused by Doxo's Webpage into making payments on accounts to Doxo that were sought and due to [Plaintiffs]"). Dkt. 1, ¶¶ 13, 25, 35, 45; *see also*, *e.g.*, *id.* ¶¶ 18, 38 (alleging without factual support that Doxo's URLs are "deceptive[]"). Plaintiffs also suggest that a survey could possibly identify consumers who are confused as to the use of their service marks. Dkt. 28 at 9 n.2. However, discovery is not a tool for finding facts needed to state a claim. *See Inst. for Wildlife Prot. v. Norton*, 337 F.Supp.2d 1223, 1226 (W.D. Wash. 2004) ("To maintain an action in federal court, an actual case or controversy must exist, and discovery may not be used to conduct a fishing expedition in hopes that some fact supporting an allegation will be uncovered."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678– 79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions).

Finally, Plaintiffs allege that "multiple consumers have made complaints about Doxo to the Better Business Bureau" but do not identify the multiple consumers or the nature of their

---

[3] Plaintiffs appear to argue that the third factor is impliedly satisfied by Doxo's display of their trade names in a larger font and in support, rely on *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003). However, in that summary judgment decision, there was strong evidence of an intent to deceive and actual customer confusion. *Id.*

complaints. Plaintiffs provide only two excerpts from the Better Business Bureau's website:

> 02/07/02022  My medical provider said they have no agreement with doxo to help assist with payment and they never received the payment I paid to doxo. This is shady and Ive [sic] reported your business to my bank for investigation as well.

> 02/03/2022  Doxo popped up as a means for me to pay my medical **** to Dermatopathlogy Alliance of ******** and I paid in January 13, 2022 but the real business never got my payment. I contacted them twice and after being put on hold the call was disconnected. I called my bank to file a dispute and to get my money back. Doxo is a scam and should be shut down and prosecuted.

Dkt. 1, ¶ 31.

Neither of these consumers indicated that they were confused by Doxo's platform. Rather, the reviews indicate that the consumers understood Doxo was "a means" to pay their bills to other billers and they were complaining because their payments to two unknown medical providers had not been processed properly.

Plaintiffs' Complaint contains only scant, conclusory allegations of consumer confusion which, even when considered in the light most favorable to them, are belied by Doxo's service and website, which allows consumers to pay multiple billers through their platform; provides access to over 100,000 billers from which consumers can choose; contains disclaimers that appear on several occasions during the payment process; displays prominent Doxo logo and branding; and provides special features on each Biller Profile Page to ensure consumers do not mistakenly pay the wrong biller. The undersigned cannot conclude that a "reasonably prudent consumer" in the relevant marketplace could have interpreted Doxo's website as being endorsed or sponsored by Plaintiffs. The undersigned concludes that the third *New Kid* factor is met.

## CONCLUSION

Nominative use of the trademark is a fair use," and "fair use is, by definition, not infringement." *Toyota*, 610 F.3d at 1175. Because Doxo's use of Plaintiffs' marks on its website

REPORT AND RECOMMENDATION - 19

constitutes nominative fair use, Plaintiffs' Lanham Act claim (Count I) fails as a matter of law. *See New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical is there a 'likelihood of confusion?'").

Because Plaintiffs' other derivative claims (Counts II, III and IV) are based on the same alleged consumer confusion, they also fail. *See* Dkt. 1, ¶ 61 (alleging that Doxo violated the CPA because it "falsely represented that Plaintiffs were affiliated with Doxo"); *id*. ¶ 70 (claiming that Doxo is liable for tortious interference with business relations because it "has described and continues to confuse and deceive, CMRE's consumers into making payments due and owing on collections accounts to Doxo, instead of CMRE"); *id*. ¶ 77 (alleging that Doxo is liable for conversion because Doxo has "confused and deceived, and continues to confuse and deceive, Plaintiffs' consumers into making payments on collection accounts owed to Plaintiffs to Doxo instead"). *See Lichtenegger*, 913 F.3d at 892–93 & n.6 ("[A]lthough Plaintiff's complaint included various causes of action—including trademark infringement and dilution and federal and state unfair competition—the nominative fair use defense applied to all of its claims.").

Therefore, the undersigned recommends that the Court grant Doxo's motion for judgment on the pleadings, dismiss Plaintiffs' claims with prejudice, and rule in Doxo's favor on its request for a declaratory judgment of nominative fair use.

<u>OBJECTIONS AND APPEAL</u>

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

REPORT AND RECOMMENDATION - 20

Objections, however, may be filed and served upon all parties no later than **October 24, 2022**. The Clerk should note the matter for **October 26, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed five (5) pages. The failure to timely object may affect the right to appeal.

DATED this 7th day of October, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21